UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOMINIC DEL PONTE, an infant by his mother
and natural guardian Linda Del Ponte, and LINDA
DEL PONTE,

Plaintiffs,

-v-

UNIVERSAL CITY DEVELOPMENT PARTNERS,
LTD., and RAY-ART ENTERPRISES, INC.,

Defendants,

RAY-ART ENTERPRISES, INC.,

Third-Party Plaintiff,

-v-

MAGIC TOUCH CORP.,

Third-Party Defendant.

Case No. 07-CV-2360 (KMK) (LMS)

OPINION & ORDER

Appearances:

Alan M. Shapey, Esq.
Lipsig Shapey Manus & Moverman, P.C.
New York, New York
*Counsel for Plaintiffs*

Michael H. Bernstein, Esq.
Sedgwick, Detert, Moran & Arnold, LLP
New York, New York
*Counsel for Defendants Universal City Development Partners, Ltd., and Ray-Art Enterprises,
Inc.*

Richard Eric Leff, Esq.
McGivney & Kluger
New York, New York
*Counsel for Defendant Universal City Development Partners, Ltd.*

KENNETH M. KARAS, District Judge:

On July 13, 2007, Chief Magistrate Judge Lisa Margaret Smith issued a Report and Recommendation rejecting Defendant Ray-Art Enterprises, Inc.'s ("Ray-Art") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (*See* Report and Recommendation of July 13, 2007 ("R&R").) Ray-Art subsequently filed a series of specific objections to Magistrate Judge Smith's Report and Recommendation. For the reasons that follow, the Court adopts Magistrate Judge Smith's Report and Recommendation and denies Ray-Art's Motion to Dismiss.

## I.  Background

Although the Court will assume a general familiarity with the facts as discussed in Magistrate Judge Smith's Report and Recommendation, the Court will briefly summarize the facts most salient to this motion.

On May 28, 2006, Plaintiffs Dominic Del Ponte, an infant by his mother Linda Del Ponte, and Linda Del Ponte (herein collectively, "Plaintiffs"), purchased two necklaces from a kiosk at Universal Studios Theme Park in Orlando, Florida. (Compl. at ¶ 25.) Plaintiffs are both New York residents. (Compl. at ¶ 1.) Upon return to New York, Dominic Del Ponte began to chew on both of the necklaces purchased from the Universal Studios kiosk. (Mem. of Law in Opp. to the Mot. of Def. Ray-Art to Dismiss Ex. A at 1 (Affidavit of Linda Del Ponte at 1) ("Del Ponte Affidavit").) Linda Del Ponte discarded one of the necklaces, but kept the other. (*Id.*) Shortly thereafter, routine pediatric tests revealed that Dominic Del Ponte had elevated levels of lead in his blood. (*Id.* at 2.) Searching to explain the contamination, Plaintiffs examined their home and possessions for the presence of lead. (*Id.*) Testing of the home came

up negative, but testing of the remaining necklace revealed elevated levels of lead. (*Id.*)

Plaintiffs subsequently filed the instant Complaint against Universal City Development Partners Corp. ("Universal"), the owner and operator of Universal Studios Theme Park, and Ray-Art, the operator of the kiosk that allegedly sold the necklaces to Plaintiffs. (Compl. at ¶ 22-23.) After the case was removed to federal court on grounds of diversity, Defendant Ray-Art filed a motion to dismiss for lack of personal jurisdiction. (Docket. No. 6.) In response, Magistrate Judge Smith permitted Plaintiffs to conduct limited discovery into Ray-Art's connections with the New York forum. This limited discovery, conducted via five interrogatories, disclosed that Ray-Art had purchased approximately thirty-one percent of its inventory from New York vendors between the years of 2002 and 2006, (Def. Ray-Art's Obj. and Responses to Pls.' Interrogatories at 5 ("Interrogatories")), and that Ray-Art principals had visited New York each year from 2003 to 2006 (Interrogatories at 6). In response to Plaintiffs' final interrogatory, which requested the name of the supplier and/or distributor of the necklace analyzed by Plaintiffs, Ray-Art stated that it had purchased an inventory item that "resembles" the necklace from a Pennsylvania based company, Magic Touch Corp. ("Magic Touch"). (Interrogatories at 7.) Ray-Art then filed a Third-Party Complaint against Magic Touch, alleging that Magic Touch had supplied Ray-Art with the necklace in question. (Third-Party Complaint at ¶¶ 17-18.) Magic Touch disputes Ray-Art's allegations and denies that it supplied the necklace to Ray-Art. (Ray-Art's Answer, Affirmative Defenses to Third-Party Compl., Counterclaim, and Cross-Claims at ¶¶ 17-18.)

## II.  Discussion

### A.  Standard of Review of the Magistrate Judge's Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'"  *Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007) (quoting 28 U.S.C. § 636(b)(1)(C)).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," *see* Fed. R. Civ. P. 72(b), and must be made "within 10 days after being served with a copy of the recommended disposition."  *Id.*; *see also* 28 U.S.C. § 636(b)(1)(C).

Where a party submits timely objections to a report and recommendation, as Defendant Ray-Art has here, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review.  *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b) ("The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule."); *see also Donahue*, 2007 WL 831816, at *1.  The district court may adopt those portions of a report to which no objections have been made, as long as those portions are not clearly erroneous.  *See Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).

<u>B. Standard of Review under Fed. R. Civ. P. 12(b)(2)</u>

"[R]esolution of a 12(b)(2) motion to dismiss for lack of personal jurisdiction made in the Southern District of New York requires a two-step analysis." *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). "First, the court must determine if New York law would confer upon its courts the jurisdiction to reach the defendant," such as under the New York long-arm statute. *Id.* If such a basis for jurisdiction exists, the court must then determine whether the extension of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment. *See id.*

On a Rule 12(b)(2) motion to dismiss, a plaintiff has the burden of establishing that the court maintains jurisdiction over the defendant. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999). However, "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citations omitted); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[A] prima facie showing of jurisdiction does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997). A plaintiff may "make this showing through [its] own affidavits and supporting materials[,] containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks and citations omitted). While a court may

consider materials beyond the pleadings, the court must credit a plaintiff's allegations in support of jurisdiction.  *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) ("[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").  Thus, the question before the Court is whether Plaintiffs have made a prima facie showing, based on their pleadings and affidavits, that the Court has personal jurisdiction over Ray-Art.[1]

C.  Ray-Art's Objections to Magistrate Judge Smith's Report and Recommendation

Plaintiffs contend that Defendant Ray-Art is subject to specific personal jurisdiction under Section 302(a)(3)(i) of New York's long-arm statute.  (R&R at 4.)  Section 302(a)(3)(i) authorizes a New York court to exercise personal jurisdiction when:  (1) a defendant commits a tort outside of New York State that causes injury within New York State; and (2) the defendant either regularly does or solicits business in New York, engages in any persistent course of conduct in New York, or derives substantial revenue from goods used or consumed or services rendered in New York.  *See e.g., Overseas Media Inc., v. Skvortsov,* 407 F. Supp. 2d 563, 575 (S.D.N.Y. 2006) (explicating Section 302(a)(3)(i)).  Magistrate Judge Smith concluded that Plaintiffs had established a prima facie case under 302(a)(3)(i):  she found that Plaintiff had alleged that Ray-Art had committed a tort outside New York (R&R at 10-11); that the

---

[1] The analysis differs, however, if the jurisdictional challenge involves discovery and a hearing:  in such a case the plaintiff must demonstrate jurisdiction by a preponderance of the evidence.  *See Cutco Indus. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986); *see also Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (noting that when "defendant contests the plaintiff's factual allegations, then a hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence").  Here, however, Defendant did not request a hearing.

aforementioned tort caused injury in New York (*Id.*); that Ray-Art regularly does business in New York (*Id.* at 10-11); and that jurisdiction would not violate due process (*Id.* at 17).

Ray-Art's objections to Magistrate Judge Smith's Report and Recommendation state four specific concerns, which can be summarized as follows:

1. Magistrate Judge Smith erred in determining that purchases of items from New York vendors and related trips to New York by Ray-Art officers were sufficient to establish that Ray-Art regularly conducts business in New York.  (Def. Ray Art's Objections to Report & Recommendation of Mag. Judge Lisa M. Smith 3 ("Objections").)

2. Magistrate Judge Smith overlooked factual evidence that Ray-Art's contacts with New York distributors were not in any way related to the causes of action at issue. As a result, there are insufficient minimum contacts to survive due process analysis.  (*Id.* at 9-10.)

3. Magistrate Judge Smith overlooked *Helicopteros Nacionales de Columbia, S.S. v. Hall*, which held that "mere purchases and related trips, even if occurring at related intervals, are not enough to warrant a State's assertion of in personem jurisdiction over a non-resident corporation in a cause of action not related to the purchases," 466 U.S. 408, 409 (1984).  (Objections at 16-18.)

4. Magistrate Judge Smith erred in holding that the exercise of personal jurisdiction over Ray-Art comports with traditional notions of fair play and substantial justice. (Objections at 18-21.)

The Court reviews de novo these objected-to portions of the Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C).

### 1.  Ray-Art Regularly "Regularly Does or Solicits Business" in New York

Accepting that Plaintiffs properly alleged that Ray-Art committed an out-of-state tort leading to an in-state injury, jurisdiction under Section 302(a)(3)(i) is only proper if Plaintiffs can establish that Defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state."  N.Y. C.P.L.R. § 302(a)(3)(i).  As the statute is phrased in the

disjunctive, the Court need only determine that Defendant satisfies one of the three prongs of the test.

Magistrate Judge Smith determined that Ray-Art satisfied the first of the three prongs of the test – the regular doing or solicitation of business. (R&R at 11.) Based on affidavits and other documents, Magistrate Judge Smith noted that Ray-Art had purchased approximately thirty-one percent of its inventory from New York companies over the past five years. Further, Magistrate Judge Smith noted that at least one of Ray-Art's principals had traveled to New York on business in each of the last four years. For the reasons that follow, the Court is persuaded that Magistrate Judge Smith was correct: Ray-Art regularly has done sufficient business with New York to satisfy New York's long-arm statute.

The question of whether a given defendant "regularly does or solicits business" cannot be answered by any bright line rule. The drafters of Section 302(a)(3)(i) provided some general guidance, commenting that amount of business that must be done to satisfy the statute sits somewhere between the substantial contacts required of general jurisdiction under Section 301 and the "one shot" business transaction required in Section 302(a)(1). *See* Vincent C. Alexander, Practice Commentaries, CPLR § C302:12, 7B McKinney's Consol. Laws of N.Y. 158, 159 (2001) ("The drafters of CPLR 302(a)(3)(i), however, said that the amount of business that must be done to satisfy (i) is less than that which is required to satisfy the conventional doing business standard. On the other hand, the doing business condition specified in subset (i) requires something more than the "one shot" business transaction described in 302(a)(1)."); *see also* N.Y. C.P.L.R. §§ 301, 302(a)(1). This guidance, however, merely sets the outer boundaries of the quantity and quality of business contacts required to satisfy the statute. As cases under

Section 302(a)(3)(i) naturally fall somewhere in between these two poles, courts have wrestled to develop a means of assessing whether a given defendant is "doing business" in New York.

To determine whether the defendant satisfies the requirements of Section 302(a)(3)(i), some courts have looked at the percentage of total business that a given defendant does in New York. *See, e.g., Chunky Corp. v. Blumenthal Bros. Chocolate Co.*, 299 F. Supp. 110, 115 (S.D.N.Y. 1969) (denying jurisdiction under 302(a)(3)(i) upon demonstration that plaintiff made 4% of its sales in New York, but noting that practice commentaries suggest that "if a firm derived 10% of its revenue from New York it would be subject to personal jurisdiction under this subsection"); *Murdock v. Arenson Int'l USA, Inc.*, 554 N.Y.S.2d 887, 889 (App. Div. 1990) (holding that 0.5% of total sales to New York customers, amounting to $9000, was insufficient to uphold jurisdiction under Section 302(a)(3)(i)); *Tonns v. Spiegel's,* 455 N.Y.S.2d 125, 126-27 (App. Div. 1982) (holding that between 4 and 7.1% of total annual sales to New York customers over a period of three years was sufficient to uphold jurisdiction under Section 302(a)(3)(i)); *Allen v. Can. Gen. Elec. Co.,* 410 N.Y.S.2d 707, 708-09 (App. Div. 1978) (holding that 1% of total sales to New York customers, amounting to the considerable sum of $8,790,000, was sufficient to uphold jurisdiction under Section 302(a)(3)(i)); *Reynolds v. Aircraft Leasing*, *Inc.,* 756 N.Y.S.2d 704, 709 (Sup. Ct. 2002) (noting that because defendant had received approximately 8.5% of its income from sales to New York customers, defendant "does business here within the meaning of [Section 302(a)(3)(i)]"). While percentage of business is typically measured by sales in the forum, purchases from companies located in New York can also demonstrate regular business dealings with the forum. *See David Tunick, Inc., v. Kornfeld*, *Inc.*, 813 F. Supp. 988, 991 (S.D.N.Y. 1993) (concluding that defendant "regularly does . . . business

in New York" in part though evidence that defendant "has purchased works of art for his personal collection from New York art galleries and collectors").

Here, jurisdictional discovery has demonstrated that Ray-Art has purchased nearly a third of its inventory over a five-year period from New York vendors. This volume of business, expressed as percentage of overall expenditures, equals or surpasses that demonstrated in many other cases where New York courts upheld long-arm jurisdiction under Section 302(a)(3)(i). *See e.g., Tonns*, 455 N.Y.S.2d at 126-27 (upholding jurisdiction with New York business sales of 4 - 7.1%); *Canadian Gen. Elec. Co.*, 410 N.Y.S.2d at 708-09 (upholding jurisdiction with New York business sales of 1%); *Reynolds*, 756 N.Y.S.2d at 709 (upholding jurisdiction with New York business sales of 8.5%).

Consistent business visits to New York can also serve to establish a defendant's connection to the forum under Section 302(a)(3)(i). *See Bank Brussels Lambert*, 305 F.3d at 126 (noting that a multi-year apartment rental in New York, coupled with business visits, was sufficient to establish jurisdiction under Section 302(a)(3)(i)); *Plastwood Corp. v. Robinson*, No. 04-CV-3214, 2004 WL 1933625, at *3 & *5 (S.D.N.Y. Aug. 30, 2004) (noting that "repeated business trips to New York could amount to a persistent course of conduct or even regularly doing business" (internal quotation marks omitted)); *Granada Television, Int'l, Ltd. v. Lorindy Pictures Int'l*, 606 F. Supp. 68, 72 (S.D.N.Y. 1984) (holding that there was "no question" of a course of conduct where defendant owned property in New York and repeatedly visited New York for 124 days in eighteen months prior to service of process). In the instant case, a least one of Ray-Art's principals has traveled to New York on business in each of the last four years. These systematic visits, in combination with substantial purchases from New York vendors,

evince the kind of intentional and continuous business activities in New York necessary to satisfy the requirements of Section 302(a)(3)(i).

### 2. Minimum Contacts

"If there is a statutory basis for jurisdiction, the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert*, 305 F.3d at 124. "The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Metro. Life Ins.*, 84 F.3d at 567.

The first component of the due process inquiry asks whether the defendant has certain "minimum contacts" with the forum state so that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co., v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *see also Bank Brussels Lambert,* 305 F.3d at 127. To determine if such "minimum contacts" exist, the court must inquire into "'the relationship among the defendant, the forum, and the litigation.'" *Rush v. Savchuk*, 444 U.S. 320, 327 (1980) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). If the claim at issue "arises out of, or relates to, the defendant's contacts with the forum," minimum contacts exist "where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This is known as specific personal jurisdiction. If, on the other hand, defendant's contacts do not arise out of or relate to the forum, minimum contacts exist only where the defendant's contacts with the forum are "continuous and systematic." *U.S. Titan*, 241 F.3d at

152; *see also Helicopteros*, 466 U.S. at 415-16. This is known as general personal jurisdiction.

As discussed above, this Court, following the Report and Recommendation of Magistrate Judge Smith, upheld jurisdiction over Ray-Art under Section 302(a)(3)(i) of the New York long-arm statute. Section 302(a)(3)(i), like each of the various subsections of Section 302, provides a mechanism for obtaining specific personal jurisdiction, not general personal jurisdiction. *See e.g., Roe v. Arnold*, 502 F. Supp. 2d 346, 350 (E.D.N.Y. 2007) ("Section 301 of the CPLR provides for general jurisdiction over any of a defendant's activities, while Section 302 provides for the exercise of specific jurisdiction arising out of particular acts."). As a result, jurisdiction under Section 302(a)(3)(i) must comport with the minimum contacts test for specific personal jurisdiction: the Court must determine if the claim by Plaintiffs arises out of or relates to Ray-Art's contacts with the forum, and if Ray-Art purposefully availed itself of doing business in the forum such that it could have foreseen being haled into the forum's courts. *See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 38 (2d Cir. 2001) ("Specific jurisdiction is determined by first asking if the claim arises out of or relates to defendant's contacts with the state, and then showing defendant purposefully availed itself of the privilege of doing business in the forum so that defendant could reasonably foresee being haled into the forum's courts."); *U.S. Titan,* 241 F.3d at 152 (citing *Burger King Corp.*, 471 U.S. at 472-76)).

The second part of this test is easily answered. There is ample evidence that Ray-Art purposefully availed itself of the New York forum. As previously noted, Ray-Art purchased nearly a third of its inventory from New York vendors, and Ray-Art's principals annually visited New York for business. Given these contacts with New York, Ray-Art should have entertained the possibility of being haled into a New York court as a defendant on any number of matters.

Thus, Ray-Art's business activities in New York were sufficient to constitute purposeful availment of the forum.[2]

The principal focus of Ray-Art's objections to Magistrate Judge Smith's Report and Recommendation, however, centers on the first prong of the minimum contacts test – the requirement that Plaintiffs' claim "arises out of or relates to" Ray-Art's contacts with the forum. Magistrate Judge Smith summarily concluded that Ray-Art's business dealings with the forum

---

[2] Ray-Art's third objection – that Magistrate Judge Smith overlooked language in *Helicopteros* which states that "mere purchases" in a forum are insufficient to uphold personal jurisdiction – is misplaced. 466 U.S. at 409. *Helicopteros* was a case concerning general personal jurisdiction, not specific personal jurisdiction. Ray-Art quotes the following language from *Helicopteros*:

> "In accordance with *Rosenberg*, we hold that mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."

*Helicopteros*, 466 U.S. at 418. Defendant ignores, however, the subsequent footnote:

> "Arguably, therefore, *Rosenberg* also stands for the proposition that mere purchases are not sufficient basis for either general or specific jurisdiction. Because the case before us is one which there has been an assertion of general jurisdiction over a foreign defendant, we need not decide the continuing validity of *Rosenberg* with respect to an assertion of specific jurisdiction, i.e., where the cause of action arises out of or relates to the purchases by the defendant in the forum State."

*Id*. at 418 n.12. The court in *Helicopteros* did not decide whether a large volume of purchases would be sufficient to satisfy specific personal jurisdiction – it merely determined that purchases from the forum were insufficient to satisfy the higher threshold required of general personal jurisdiction. As this case concerns only specific personal jurisdiction, *Helicopteros* is not dispositive.

were "related to the causes of action in this case."  (R&R at 21.)[3]  Ray-Art vehemently disputes

this finding, and argues that there is an insufficient relation between Plaintiffs' claim and Ray-

Art's contacts with New York to uphold jurisdiction.  Ray-Art points out that the Parties have

engaged in limited jurisdictional discovery, and the only inventory product found by Ray-Art

matching the description of the offending necklace allegedly sold to Plaintiffs was acquired by

Ray-Art from a supplier in Pennsylvania, not New York.  Thus, Ray-Art argues that even

assuming that it negligently sold the allegedly defective necklace to Plaintiffs, Plaintiffs' injury

does not "arise from or relate to" Ray-Art's New York contacts – at best, the injury relates to

Ray-Art's Pennsylvania contacts.  Plaintiffs, on the other hand, argue that Ray-Art's interactions

with New York are intimately related to the injury suffered by Plaintiffs.  Ray-Art is in the

business of purchasing jewelry wholesale and selling it retail.  Nearly a third of the jewelry Ray-

Art sells to consumers comes from New York vendors.  Thus, Plaintiffs argue, regardless of

whether the specific necklace that allegedly injured Dominic Del Ponte was actually purchased

---

[3] In her Report and Recommendation, Magistrate Judge Smith stated the following:

> As agreed upon by the parties, because Plaintiffs contend that
> Defendant Ray-Art is subject to personal jurisdiction in this Court
> based upon its transactions with New York that give rise to the
> instant claims, the Court must assess whether the exercise of
> personal specific jurisdiction in this case is appropriate."

(R&R at 18.)   Defendant Ray-Art reads this portion of Magistrate Judge Smith's Report and
Recommendation to mean that Magistrate Judge Smith thought that the Parties had agreed that
Defendant's conduct in New York gave rise to the instant claim.  (Def. Ray-Art's Objections to
Mag. Smith's R&R at 15-16.)   Ray-Art is mistaken:  this portion of Magistrate Smith's Report
and Recommendation merely notes that because the Parties agree that Plaintiffs *contend* that
Plaintiffs' claim arises out of Ray-Art's transactions with New York, this is a case of specific
personal jurisdiction, not general personal jurisdiction.  Such a comment accurately describes the
posture of the case – Magistrate Smith was not stating that Ray-Art had conceded one of its
principal arguments in this case.

by Ray-Art from a New York vendor – a fact Plaintiffs believe is still inconclusive – Ray-Art's

New York activities "relate to" the retail business activities that resulted in Plaintiffs' injury.[4]

　　　　The resolution of the minimum contacts question thus hinges on what it means for a

cause of action to "arise out of or relate to" a defendant's conduct in the forum.  Before

interpreting the language "arise from or relate to," however, the Court needs to address the

authority brought forward by Plaintiffs that, in sum and substance, suggests that jurisdiction

under 302(a)(3)(i) does not require *any* relation between a defendant's forum contacts and

Plaintiffs' cause of action. (Pls.' Mem. of Law in Response to Def. Ray-Art's Obj. to R&R at 8.)

While neither the Supreme Court nor the Second Circuit has ever held that specific jurisdiction is

constitutionally permissible without a demonstrable relation between a defendant's contacts with

the forum and a plaintiff's cause of action, several courts in New York have interpreted Section

302(a)(3)(i) in such a manner.  *See, e.g., Hearst Corp. v. Goldberger*, 96-CV-3620, 1997 WL

97097, at *14 (S.D.N.Y. Feb. 26, 1997) ("[Unlike Section 302(a)(1),] CPLR 302(a)(3)(i) does

not require any connection between defendants' regular activities and the particular tortious act

or the cause of action arising from it."); *Gillmore v. J. S. Inskip, Inc.*, 54 Misc.2d 218, 221 (N.Y.

Sup. Ct. 1967) ("The 'substantial revenue' provisions of [Section 302(a)(3)] do not require any

connection between the tortious act committed outside the State and the deriving of revenue

from goods used in New York or from interstate or international commerce.).  These cases,

---

[4] Ray-Art has filed a third-party complaint against Magic Touch, a Pennsylvania based company, alleging that Magic Touch was the source of the necklace in question.  Magic Touch has disputed Ray-Art's claim.  At the December 6, 2007 oral argument, counsel for Plaintiffs called attention to Magic Touch's dispute with Ray-Art, noting that the true origin of the necklace is still in dispute.  While this may indeed be true, it is also worth noting that Plaintiff has never specifically alleged in a pleading or affidavit that the offending necklace came from Ray-Art's New York-derived inventory.

however, do not cite any Supreme Court or Second Circuit precedent for this proposition. Rather, they look to the practice commentaries of the New York long-arm statute. While these commentaries note the expansive nature of jurisdiction under the New York long-arm statute, they do not, as Plaintiffs suggest, advocate the removal of the constitutional requirements inherent to the exercise of personal jurisdiction.

Plaintiffs are correct to note that certain passages of the practice commentaries call into question the requirement that a defendant's conduct in the forum be linked with a plaintiff's cause of action when jurisdiction is sought under Section 302(a)(3)(i). *See, e.g.,* Alexander, § C302:12, 7B McKinney's Consol. Laws of N.Y. at 158 ("Plaintiff's cause of action need not arise out of the activity described in subset (i) . . . ."); Joseph M. McLaughlin, Practice Commentaries § C302:21, 7B McKinney's Consol. Laws of N.Y. 109, 110 (1990) ("There is a major difference, however, between the business transacted under CPLR 302(a)(1) and the business done under 302(a)(3). In the former, the cause of action must have its genesis in the transaction, in the latter, there is no such requirement."); *see also* David D. Siegel, New York Practice § 88 (4th ed. 2005) (noting that Section 302(a)(3)(i) "requires at root a showing that the defendant has some overall contact with New York, or derives some substantial commercial benefit from New York. The cause of action sued on need not be related to those New York activities, however."); Jack B. Weinstein, et al., 2 New York Civil Practice ¶ 302.5, at 3-78 (2007) ("CPLR 302(a)(3) falls into a somewhat different category. It does not require that the plaintiff's tort claim arise out of a defendant's contacts in New York."). These passages, however, merely construe the outer reaches of the New York long-arm provision, not the concomitant constitutional requirements of jurisdiction.

It may be true, as the commentaries suggest, that under a broad construction of Section 302(a)(3)(i) "it is not required that the cause of action arise in any way" from a defendant's contacts with the New York forum. McLaughlin, § C302:23, 7B McKinney's Consol. Laws of N.Y. at 111. Satisfaction of the long-arm statute, however, gets a plaintiff only half-way to the exercise of jurisdiction – the plaintiff must also satisfy the constitutional requirements of jurisdiction. *See Bank Brussels Lambert*, 305 F.3d at 124 (stating two-step requirement). This is made clear in the same statutory commentaries relied upon by Plaintiffs. Judge McLaughlin, author of one of the commentaries that the aforementioned district courts relied upon, observed that the Supreme Court's decision in *World Wide Volkswagon Corp., v. Woodson*, 444 U.S. 286 (1980), cast a "constitutional pall" over long-arm statutes like 302(a)(3)(i). McLaughlin,§ C302:19, 7B McKinney's Consol. Laws of N.Y. at 105. Judge McLaughlin further observed that while Section 302(a)(3)(i) was drafted "even more broadly than the statute assailed in [*World Wide*] *Volkswagen*," it can be saved by "judicious construction." *Id*. at 107 (internal quotations omitted). Following *World Wide Volkswagen*, judicious construction requires this Court to assess not only whether Ray-Art's conduct satisfies the forum's long arm statute, but also whether jurisdiction as construed under this statute satisfies the constitutional requirements of due process. *See World-Wide Volkswagen*, 444 U.S. at 291 ("As has long been settled, and as we reaffirm today, a state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum."); *see also* Siegel § 88 ("An attempted jurisdictional exercise that runs afoul of constitutional restrictions, however, as occurred in *World-Wide [Volkswagen]*, would fail whether predicated on the particular language of the statute the court has before it – in *World-Wide [Volkswagen]*, the

Oklahoma statute akin to New York's CPLR 302(a)(3)(i) – or any other provision.").[5]

Plaintiffs do not argue that Ray-Art should be subject to general personal jurisdiction of this Court. If this were a case of general personal jurisdiction, due process would not require that Plaintiffs' cause of action be related to Ray-Art's transactions in the forum. *See U.S. Titan,* 241 F.3d at 152 ("General personal jurisdiction, which does require a finding of 'continuous and systematic' contacts, is only necessary when the cause of action does not arise from the defendant's contacts with the forum state.") The Court is not, however, faced with a question of general personal jurisdiction. Rather, the Court is tasked with assessing whether the exercise of specific personal jurisdiction is proper in the instant case. Section 302(a)(3)(i), while exhibiting some of the qualities of general personal jurisdiction, is a means of exercising specific personal jurisdiction. And, as noted above, specific jurisdiction over a given defendant is unconstitutional if the plaintiffs' claim does not arise out of or relate to the defendant's contacts with the forum.[6]

_____

[5] Because the Court need only address whether Plaintiffs' invocation of Section 302(a)(3)(i) is constitutional in this case, there is no cause for this Court to discuss the facial constitutionality of this provision.

[6] Some scholars have observed that certain long-arm statutes seem to create a "hybrid personal jurisdiction" incorporating features of both general and specific jurisdiction. *See* Linda Sandstrom Simard, *Hybrid Personal Jurisdiction: It's Not General Jurisdiction, or Specific Jurisdiction, but Is It Constitutional?,* 48 Case W. Res. L. Rev. 559 (1998); *see also* William M. Richman, *A Sliding Scale to Supplement the Distinction Between General and Specific Jurisdiction,* 72 Cal. L. Rev. 1328, 1336-46 (1984). Section 302(a)(3)(i) arguably is such a statute. *See* Simard, 48 Case W. Res. L. Rev. at 562 n.11 (listing various state long-arm statutes resembling Section 302(a)(3)). Like general jurisdiction, Section 302(a)(3)(i) requires a pattern of conduct by a defendant in the forum; however, the level of conduct needed to satisfy the statute is lower than that required of general jurisdiction. Like specific jurisdiction, on the other hand, Section 302(a)(3)(i) requires a causal relation between the forum and the defendant's conduct; however, this relationship can be established by a plaintiffs' injury in the forum, rather than the defendant's conduct in the forum. Some have argued that this hybrid framework – essentially half general jurisdiction, half specific jurisdiction – should pass constitutional muster as long as the underlying goals of due process are satisfied. *See* Simard, 48 *Case. W. Res. L.*

*See, e.g., Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997) ("To establish the minimum contacts necessary to justify 'specific' jurisdiction, the [plaintiffs] first must show that their claim arises out of or relates to [defendant's] contacts with [the forum]." (citing *Helicopteros,* 466 U.S. at 414)); *see also Mallon v. Walt Disney World Co.*, 42 F. Supp. 2d 143, 146 (D. Conn. 1998) ("The Connecticut long-arm statute . . . does not require that the cause of action and the defendant's contacts with this state be causally connected. However, under the Due Process Clause, specific jurisdiction may not be exercised without some causal connection between the defendant's contacts with the forum and the existence of plaintiff's lawsuit." (internal quotation marks omitted)).

Having determined that specific jurisdiction under Section 302(a)(3)(i) cannot be upheld merely by satisfying the long-arm statute, the Court thus returns to the previously posed question: What does it mean for a cause of action to "arise out of or relate to" a given defendant's conduct in a forum? As the Second Circuit has observed, there is little consensus on this issue. *See Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) ("[T]here appears to be a split in the Circuits on the standard to be applied in determining if a tort claim 'relates' to the defendant's activities within the state."). The Supreme Court has resisted explicating the scope of the "arise out of or relate to" requirement. *See Helicopteros*, 466 U.S. at 415 n.10 ("We do not address . . . whether the terms 'arising out of' and 'related to' describe different connections .

_____

*Rev*. at 588-89. Plaintiffs push this line of reasoning, arguing that the Court should uphold jurisdiction based solely on satisfaction of the statute, regardless of whether Plaintiffs' cause of action "arises out of or relates to" Ray-Art's conduct in the forum. For the reasons already discussed, however, the Court resists the invitation to ignore the constitutional requirements of due process. Supreme Court and Second Circuit authority is quite clear on this matter: specific jurisdiction requires a showing that Plaintiffs' claim "arises out of or relates to" Ray-Art's contacts with the forum.

. . . Nor do we reach the question whether, if the two types of relationship differ, a forum's exercise of personal jurisdiction in a situation where the cause of action 'relates to,' but does not 'arise out of,' the defendant's contacts with the forum should be analyzed as an assertion of specific jurisdiction."); *Carnival Cruise Lines, Inc., v. Shute*, 499 U.S. 585, 589 (1991) (holding that construction of a forum selection clause was dispositive of the case, thus permitting the Court to punt on the issue for which certiorari was granted: whether plaintiff's claim arose from or related to defendant's contacts with the forum); *see also O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007) (collecting Supreme Court cases commenting on the "arise from or relate to" language).

Without explicit guidance from the Supreme Court, the various Circuits have reached different conclusions on what standard should be applied in determining whether a claim "arises from or relates to" a defendant's contacts with a forum. Some circuits have held that jurisdiction over a defendant is proper only when the defendant's conduct within the forum is the "proximate cause" of the plaintiff's injury. *See Chew*, 143 F.3d at 29 (noting use of the "proximate cause" test by the First and Eighth Circuits). Other circuits have offered a more relaxed test, holding that minimum contacts exist when a defendant's conduct is a "but for" cause of the plaintiff's injury. *See id.* (noting use of the "but for" test in the Sixth, Seventh, and Ninth Circuits).[7]

---

[7] The Ninth and Fifth Circuits explicitly apply a "but for" test. *See, e.g., Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385-86 (9th Cir. 1990) (applying the "but for" test and noting that "[i]n the absence of [defendant's] activity, [plaintiff] would not have taken the cruise, and [plaintiff's] injury would not have occurred."), *rev'd on other grounds*, 499 U.S. 585 (1991); *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981) ("In a case like this, the contractual contact is a 'but for' causative factor for the tort since it brought the parties within tortious 'striking distance' of each other."). Other Circuits, such as the Sixth and Seventh Circuits, employ very similar standards: the Sixth Circuit uses the "made possible" test, while the Seventh Circuit employs the "lies in the wake" test. *See Lanier v. Am. Bd. of Endodontics,*

The Second Circuit, however, has eschewed commitment to either test. The court in *Chew* contrasted the "but for" and the "proximate cause" tests, but explicitly rejected the "dichotomy" of these two tests. *Id.* Instead, the Court proposed a more flexible application of minimum contacts, which would view "relatedness" as but one aspect of a "general inquiry . . . designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend 'traditional notions of fair play and substantial justice.'" *See id.* (quoting *Int'l Shoe*, 326 U.S. at 316). Thus, the view of minimum contacts staked out by the Second Circuit is as follows:

> It must be remembered that the relatedness test is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend traditional notions of fair play and substantial justice. That analysis involves a consideration of the relationship among the defendant, the forum, and the litigation. Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.

*Chew,* 143 F.3d at 29 (internal citations and quotation marks omitted); *see also Mallon*, 42 F.

---

843 F.2d 901, 909 (6th Cir. 1988) (noting that the required connection exists if the injury to plaintiff was "made possible" by defendant's contacts with the forum); *Deluxe Ice Cream Co., v. R.C.H. Tool Corp.,* 897 F.2d 1209, 1216 (7th Cir. 1984) (noting that jurisdiction requires that a plaintiff's claim "lie[] in the wake of the commercial activities by which defendant submitted to the jurisdiction of the Illinois courts"). Despite their titles, the "made possible" and "lies in the wake" tests essentially describe "but for" tests. *See Chew*, 143 F.3d at 29 (commenting that the Sixth and Seventh Circuits each apply a "but for" test); *O'Connor*, 496 F.3d at 319 & n.8 (same); Mark M. Maloney, Note, *Specific Jurisdiction and the "Arise from or Relate to" Requirement . . . What Does it Mean?*, 50 Wash & Lee L. Rev. 1265, 1277-82 (1993) (same).

Supp. 2d at 146 (construing *Chew*).  Under this test, if a defendant has scant contacts with the forum, a court may demand a proximate relation between the defendant's contacts and the plaintiff's injury.  If, on the other hand, the defendant has substantial contacts with the forum (even if not sufficient to establish general jurisdiction), the court may accept a more attenuated relation between the defendant's contacts with the forum and the plaintiff's cause of action.[8]

This framework necessarily governs our consideration of the instant case.  As noted above, Ray-Art's contacts with the forum must be related to Plaintiffs' cause of action, but the degree of relation necessary to satisfy minimum contacts changes depending on the overall picture of Ray-Art's connections to the forum.  Ray-Art clearly has substantial contacts with New York, having purchased nearly a third of its inventory from New York vendors, and having repeatedly sent its principals on business trips to New York over the past four years.  And, as made clear during oral argument, the type of product purchased from New York by Ray-Art is of the same type as that alleged to have caused the injury in this case.  In light of these substantial contacts with the forum, *Chew* counsels that the relation between Ray-Art's conduct in New

---

[8] The Second Circuit's decision in *Chew* is not without its critics.  For example, just last year, the Third Circuit interpreted *Chew* as a "freewheeling totality-of-the-circumstances test" which amounts to a "hybrid" of general and specific jurisdiction.  *See O'Connor*, 496 F.3d at 321.  Not that our Circuit needs the help, but this criticism seems based on the questionable assumption that the *Chew* court simply ignored the Supreme Court's distinction between general and specific jurisdiction and, in particular, merged the minimum contacts component with the reasonableness component of due process analysis.  To be sure, if that is what *Chew* did, then this Court would be bound to deny Ray-Art's motion, as it certainly could not be said that Ray-Art is being ambushed by being haled into a forum where it purchases nearly a third of its product inventory.  This Court does not, however, accept the view that *Chew* conflated minimum contacts with reasonableness (and in so doing simply ignored Supreme Court precedent), but believes instead that the Circuit suggested a sliding scale to assist lower courts attempting to evaluate the relationship "among the defendant, the forum, and the litigation."  *Chew*, 143 F.3d at 29 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

York and Plaintiffs' cause of action need not reach the level of proximate cause – a lesser showing of relatedness will suffice to satisfy "traditional notions of fair play and substantial justice." *See Chew*, 143 F.3d at 29 (quoting *Int'l Shoe*, 326 U.S. at 316).

As noted previously in this Opinion, jurisdictional discovery has suggested the possibility that the necklace sold by Ray-Art to Plaintiffs was acquired by Ray-Art from a Pennsylvania distributor. As a result, Ray-Art argues that its purchases and activity in New York are completely unrelated to Plaintiffs' cause of action. Plaintiffs, on the other hand, argue for a broader reading of the relatedness inquiry. Specifically, Plaintiffs note that Ray-Art is in the business of purchasing jewelry wholesale and selling it retail to tourists. Thus, even assuming that there is a possibility that the offending necklace was purchased wholesale from Pennsylvania rather than New York, Plaintiffs note that Ray-Art obtains a significant percentage of similar inventory from New York vendors, and thus argues that the sale that caused injury in New York still "relates" to Ray-Art's business in New York.

While not free from doubt, the Court finds that Plaintiffs' cause of action relates to Ray-Art's contacts with the forum. Under most circumstances, the demonstrated relationship between Plaintiffs' cause of action and Ray-Art's contacts with New York would not be sufficient to warrant a finding of specific personal jurisdiction. However, Ray-Art's substantial contacts with the New York forum change the calculus. Under *Chew*, Ray-Art's consistent activity in New York effectively lowers the relatedness bar, thus permitting a broader interpretation of "arise from or relate to." Because Ray-Art has purchased a very significant portion of its inventory from New York vendors and its principals have visited New York on a yearly basis, Ray-Art's New York contacts have enabled Ray-Art to stock the variety of

inventory desired by consumers such as Plaintiffs. In other words, but for Ray-Art's New York-derived inventory, Plaintiffs may not have shopped at the kiosk in question. And, as a result of this activity in New York, Ray-Art could have anticipated becoming a party in New York courts, either as a defendant or as a plaintiff. Thus, while Ray-Art's contacts with the forum may be only broadly related to the instant cause of action, this broad relation is sufficient to satisfy the constitutional requirement of "fair play and substantial justice." *See Chew*, 143 F.3d at 30 (noting that the Second Circuit is "at liberty to decide for [itself, regardless of the authority in other Circuits] what the Due Process Clause requires to sustain personal jurisdiction"). Moreover, given the remaining uncertainty over the origin of the offending necklace, it is still possible that Plaintiffs' cause of action may directly arise from Ray-Art's New York contacts. In light of all of these considerations, including the stage at which this case rests, Plaintiff has established sufficient minimum contacts.

### 3. Is Jurisdiction "Reasonable?"

For the reasons discussed above, Ray-Art has "minimum contacts" with the New York forum. This finding, however, satisfies only the first component of the due process inquiry. The second component of the due process inquiry "asks whether the assertion of personal jurisdiction . . . is reasonable under the circumstances of the particular case." *Metro. Life Ins.,* 84 F.3d at 568 (citing *Int'l Shoe*, 326 U.S. at 316). "The Supreme Court has held that the court must evaluate the following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the

shared interest of the states in furthering substantive social policies." *Id*. (quoting *Asahi Metal Industry Co. v. Sup. Ct.*, 480 U.S. 102, 113-14 (1987)). The Court will address each of these factors in turn.

### a.  Burden on Defendant

Ray-Art argues that jurisdiction would be significantly burdensome. Ray-Art notes that its corporate officers and records subject to discovery are all located in Florida, and that communication with its New York lawyers will require regular face-to-face visits, thus necessitating onerous traveling. Ray-Art also argues convincingly that the facts in this case are comparable to those in *Metro. Life Ins.*, where the court held that "this factor cuts slightly in favor of the defendant." *Metro. Life Ins.,* 84 F.3d at 574. The Court agrees with Ray-Art, and notes that the extra expenditures of time and money which necessarily result from defending such a lawsuit in a distant forum will cause some burden on Ray-Art. Thus, this factor weighs against exercising personal jurisdiction over Ray-Art.

### b.  Interests of the Forum

The next factor is the forum state's interest in adjudicating the case. New York has a clear interest in providing a forum for its citizens to seek redress for injuries. *See LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E.2d 883, 889 (N.Y. 2000) (upholding jurisdiction under 302(a)(3)(ii) and noting that "New York has an interest in providing a convenient forum for [plaintiff], a New York resident who was injured in New York and may be entitled to relief under New York law."). Section 302(a)(3)(i) was established to grant long-arm jurisdiction over exactly this kind of incident – an injury to a New York resident by an out of state entity with significant New York contacts. Thus, this factor tips toward upholding jurisdiction in New York.

### c. Plaintiffs' Interest in Convenient and Effective Relief

Next is the Plaintiffs' interest in keeping this case within the forum state. Plaintiffs are all residents of New York and thus have an obvious and considerable interest in obtaining relief in their home state. Furthermore, the doctors, lab technicians, and people who viewed the child chewing the necklace – the individuals who are likely to be among the important experts and witnesses in this kind of personal injury case – are located in New York. In addition, Plaintiffs also have an interest in litigating one lawsuit rather than two (the other named Defendant, Universal, has already submitted an answer to Plaintiffs' Complaint in the instant matter). This factor cuts in favor of Plaintiffs.

### d. Interstate Judicial Economy

The next factor is interstate judicial economy. As noted by Ray-Art, "[i]n evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins.,* 84 F.3d at 574. Here, there are witnesses located in both New York and Florida. As this is a personal injury case, Plaintiffs will likely bring forward various experts to testify about Dominic Del Ponte's medical problems and the chemical composition of the necklace. Plaintiffs also claim that they will offer witnesses to testify that Dominic Del Ponte chewed on the necklace in New York. On the other hand, there will likely be witnesses from Florida as well – individuals who work for Ray-Art may be expected to testify about the alleged sale of the necklace and the contents of Ray-Art's inventory. In sum, there will be witnesses from both New York and Florida.

Magistrate Judge Smith properly identified one further consideration. As Defendant Universal has already answered Plaintiffs' Complaint, should the Court deny personal

jurisdiction over Ray-Art, Plaintiffs may be compelled to litigate in two separate forums.  In *Kernan*, 175 F.3d at 245, the Second Circuit considered the interest of interstate judicial economy by assessing whether the denial of jurisdiction would create litigation in two forums instead of one.  The court in *Kernan* stated that because "the alternative to adjudication of the entire dispute in New York would be the inefficient holding of separate trials," the interests of interstate judicial economy were served by upholding jurisdiction.  *Id.* at 245.  As noted above, Defendant Universal has already answered in New York; if Defendant Ray-Art were to win this motion, Plaintiffs may be compelled to litigate in both New York and Florida.

In sum, the balance of the witnesses, combined with the interests of litigating this dispute in a single forum, causes this factor to weigh in favor of jurisdiction.

### e.  Furtherance of Substantive Social Policy

The final factor requires the courts "to consider the common interests of the several states in promoting substantive social policy."  *Metro. Life Ins.,* 84 F.3d at 575.  Defendant has not demonstrated any substantive social policies that would be furthered or undermined by permitting the case against Ray-Art to go forward in New York, rather than in a second trial in Florida.  This factor thus does not weigh in either Party's favor.  *See Kernan*, 175 F.3d at 245.

### f.  Summary of the Fair Play and Substantial Justice Factors

Upon reviewing the "reasonableness factors," the Court finds that the first factor tips in Ray-Art's favor, whereas the second, third and fourth factors weigh in favor of the exercise of jurisdiction.  The fifth factor does not weigh in either direction.  In these circumstances, the Court finds that the exercise of personal jurisdiction over Ray-Art would not offend "traditional notions of fair play and substantial justice."

27

## III. Conclusion

For the reasons stated herein and in Magistrate Smith's Report and Recommendation, the

Court denies Defendant Ray-Art's Motion to Dismiss. The Clerk is respectfully directed to

terminate the pending motion. (Docket. No. 6.)

SO ORDERED.

Dated:      January **15**, 2008
               White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List:

Alan M. Shapey, Esq.
Lipsig Shapey Manus & Moverman, P.C.
40 Fulton St., 25th Floor
New York, NY 10038
(212)-285-3300
Fax: (212)-406-4544
*Counsel for Plaintiffs*

Michael H. Bernstein, Esq.
Sedgwick, Detert, Moran & Arnold, LLP
125 Broad Street, 39th Floor
New York, NY 10004
(212) 422-0202
Fax: (212) 422-0925
*Counsel for Defendants Universal City Development Partners, Ltd., and Ray-Art Enterprises, Inc.*

Richard Eric Leff, Esq.
McGivney & Kluger
80 Broad Street
New York, NY 10004
(212) 924-7212
Fax: (212) 509-4420
*Counsel for Defendant Universal City Development Partners, Ltd.*

Jennifer Aurora, Esq.
Sedgwick, Detert, Moran & Arnold, LLP
125 Broad Street, 39th Floor
New York, NY 10004
(212) 422-0202
Fax: (212) 422-0925
*Counsel for Defendant Ray-Art Enterprises, Inc.*

Rafael Vergara, Esq.
White and Williams LLP
The Atrium, East 80 Route 4
Paramus, NJ 07652
(201) 368-7200
Fax: (201) 368-7240
*Counsel for Third-Party Defendant Magic Touch, Corp.*